J-S34017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF K. A. H. B.., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M. E. I. A. H.., MOTHER | : : : : : : : | |
| | : | No. 622 WDA 2024 |

Appeal from the Decree Entered April 19, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):  8
in Adoption 2024

BEFORE:   DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED:  February 14, 2025**

M.E.I.A.H. ("Mother") appeals from the orphans' court decree which granted the petition filed by the Erie County Office of Children and Youth ("OCY") for the involuntary termination of Mother's parental rights to her minor child, K.A.H.B. (born in 2022) ("Child").  We affirm.

The orphans' court summarized the relevant factual and procedural history of this case, as follows:

>    This matter came to the attention of [OCY] in the fall of 2022 as [M]other tested positive for marijuana and methamphetamine at the time of [C]hild's birth.  [Mother] had also tested positive for methamphetamines during the pregnancy.  While in the hospital, [Mother] indicated she was homeless but she planned on moving in with a putative father, M.B. [("M.B.")], and his mother.  OCY sought an emergency shelter care order.  The request was denied and the [C]hild was placed in the care of . . . M.B.  [Mother] and M.B. agreed to a safety plan which stipulated [Mother] was not to be left alone with the [C]hild.  [Mother] and M.B. were to address

_____

[*] Former Justice specially assigned to the Superior Court.

substance abuse issues, mental health issues, and attend parenting classes. The family was opened for ongoing service with OCY.

In the first few weeks of November of 2022, [Sara Keller, OCY caseworker ("OCY caseworker")] received reports [that Mother] was demonstrating mental health instability. [Mother] verbalized she could not care for the [C]hild. [Mother] was not meeting the [C]hild's basic or medical needs. [Mother] has a history of bipolar disorder, major depressive disorder, adjustment reaction disorder, ADHD, and episodic mood disorder. [Mother] was not taking her mental health medications.

On a home visit, the [ OCY] caseworker observed M.B. to be under the influence. [Mother] was demonstrating a significant decline in her mental health. M.B. also has a history of mental health diagnoses, cannabis use disorder, and alcohol abuse disorder. M.B. has a criminal history of numerous drug offenses, [driving under the influence], tampering with physical evidence, escape, resisting arrest, disorderly conduct, and public drunkenness. Subsequent DNA testing confirmed M.B. is not the biological father of the [C]hild. The [OCY] caseworker determined M.B. had not been caring for the [C]hild. The [C]hild was in the care of M.B.'s mother who indicated she was unwilling to continue to care for the [C]hild.

The [C]hild was removed from the home and placed in foster care on November 17, 2022. A shelter care hearing was held on November 18, 2022, when it was determined the [C]hild was to remain in shelter care. The [C]hild was adjudicated dependent after a hearing on December 1, 2022. [Mother] stipulated to the allegations of dependency; M.B. did not appear for the hearing. A treatment plan [("treatment plan")] designed to meet [Mother's] presenting needs was ordered. The [M]other was ordered to:

1. Submit to genetic testing to assist in establishing paternity;

2. Remain drug and alcohol free and participate in random urinalysis screenings;

3. Participate in a drug and alcohol assessment and follow all recommendations;

4. Participate in family dependency treatment court;

5. Receive a mental health evaluation and follow all recommendations;

6. Participate in an approved parenting program and demonstrate the ability to properly and safely care for the [C]hild;

7. Obtain and maintain a source of income;

8. Obtain and maintain safe and stable housing;

9, Attend and participate in the [C]hild's medical, dental, developmental, and behavioral health appointments;

10. Meet with the [OCY] caseworker; and

11. Attend supervised visits with the [C]hild at least twice per week and provide items for the [C]hild during the visits.

A three-month review hearing was held March 16, 2023. The [orphans'] court found [Mother] had minimally complied with the treatment plan to achieve the goal of reunification. Nevertheless, the [orphans'] court maintained the goal as reunification of the [C]hild with [Mother]. The treatment plan remained in place.

Another three-month review hearing was held June 27, 2023. Once again, [Mother] demonstrated minimal compliance with the treatment plan. The goal was maintained as reunification of the [C]hild with [Mother]. The treatment plan remained in place. The [orphans'] court directed that a [sixty]-day review was to be held.

A [sixty]-day review hearing was held August 28, 2023. The [orphans'] court determined [Mother] had made no progress toward alleviating the circumstances which led to the placement of the [C]hild. [Mother] had demonstrated minimal to no compliance with the treatment plan. The [orphans'] court changed the goal from reunification to a concurrent goal of reunification and adoption. The [orphans'] court afforded [Mother] more time to engage in the treatment plan designed to address [Mother's] needs and work towards reunification with the

[C]hild. The [orphans'] court ordered a four-month review hearing.

A four-month review hearing was held December 13, 2023. The [orphans'] court determined [Mother] had demonstrated minimal compliance with the treatment plan. Because there had been no progress made to alleviate the circumstances which led to the [C]hild's placement, the [orphans'] court changed the goal for the [C]hild to adoption. Visitations with [Mother] were stopped. By the time of this [four-month] hearing, the [C]hild had been in placement about thirteen months.

[OCY] filed the petition for involuntary termination on January 12, 2024. The [hearing on the termination petition] was held April 18, 2024.

Orphans' Court Opinion, 6/7/24, at 1-4 (citations and unnecessary capitalization omitted).

At the hearing on April 18, 2024, OCY presented the testimony of the OCY caseworker and entered numerous exhibits into evidence in support of the petition to involuntarily terminate Mother's parental rights. The OCY caseworker detailed Mother's noncompliance with the treatment plan. *See* N.T., 4/18/24, at 11-76. The OCY caseworker specifically testified that Mother minimally complied and made no progress with her treatment plan which remained the same after each review hearing held in March, June, August and December of 2023. *See id*. at 15, 19, 21, 24, 28, 35, 47. Notably, OCY established that between January 30, 2023 and December 11, 2023, Mother had seventy positive urinalysis results for marijuana, alcohol metabolites/marijuana, and/or suboxone/marijuana. *See* OCY's Exhibit 9. The OCY caseworker additionally identified Mother's need for mental health and drug abuse counseling and that she must address her domestically violent

relationship with her paramour, I.J.O.Q. ("I.J.O.Q."), as Mother reported instances of his abuse. *See* N.T., 4/18/24, at 14, 17.

The OCY caseworker explained that she initially referred Mother to two substance abuse programs, but Mother left both before completing them. *See id*. at 16. After Mother failed to complete the second substance abuse program, she lacked stable housing and stayed with I.J.O.Q. *See id*. Mother informed the OCY caseworker that she did not feel safe living with I.J.O.Q. *See id*. at 17. The OCY caseworker then arranged for a bed and referred Mother to a domestic violence shelter. *See id*. However, Mother did not go to the shelter. *See id*. The OCY caseworker made an additional attempt to admit Mother to a court drug treatment program, but Mother did not qualify due to her inconsistent participation in drug abuse programs. *See id*. at 18.

Between December of 2022 and March of 2023, Mother attended nineteen out of twenty-five offered supervised visits. *See id*. at 37. She missed visits reportedly due to the weather, illness, or not confirming her attendance ahead of time. *See id*. at 38. The visits never progressed beyond supervised because Mother was unable to follow redirection or demonstrate skills learned from the parenting coach. *See id*. Mother participated in the parenting program offered during visits with the Child, but did not participate in educational programs offered outside of visits. *See id*. at 39.

Between March and June of 2023, the OCY caseworker referred Mother to two different shelters to keep her safe from I.J.O.Q. and tried to find stable housing for Mother. *See id*. at 19-20. The OCY caseworker documented

Mother's lack of participation in the housing programs. *See id*. During this time, Mother coped with her issues regarding I.J.O.Q., who is an alcoholic, by consuming alcohol herself. *See id*. at 20.

The OCY caseworker referred Mother to participate in a drug treatment group three times per week, but Mother did not comply with the program. *See id*. at 21. The OCY caseworker then referred Mother to another drug and alcohol treatment program, but the program discharged her due to lack of compliance. *See id*. In April of 2023, a mental health evaluation recommended that Mother receive medication management to address her diagnoses of bipolar disorder, depressive disorder, and opioid-related dependence. *See id*. However, Mother did not attend her medication management meetings. *See id*. at 21-22.

Despite the OCY caseworker referring Mother to a parenting program, she did not successfully follow through with the assigned tasks, which included exhibiting appropriate parenting techniques, leaving her violent relationship, finding a job, and securing housing. *See id*. The OCY caseworker testified that Mother did not achieve any of these tasks and instead continued living with I.J.O.Q., where the police filed several documented reports of domestic violence, including charges against I.J.O.Q. *See id*. at 22-23, 30, 45-46. Mother also failed to attend the Child's medical appointments. *See id*. at 23.

Between July and August of 2023, Mother told the OCY caseworker that she found employment in home health care that required her to go to patients homes but had no patients assigned to her. *See id*. at 26. Mother could not

fulfill her employment requirements and still had no income as she had no transportation to get to a patient's home. *See id*. During this time, Mother also found housing, but the agency did not find the premises to be appropriate because the OCY caseworker was suspicious that she was living with I.J.O.Q. *See id*. at 50, 64.

At the time of the termination hearing, the OCY caseworker testified that the Child had been in pre-adoptive placement for seventeen months. *See id*. at 34. The OCY caseworker observed that the pre-adoptive parents are meeting all the Child's needs and that the Child has a positive bond with the pre-adoptive father and mother, who she refers to as mommy and daddy. *See id*. The Child is on target developmentally and in good health. *See id*. The pre-adoptive parents are taking measures to keep the Child connected to her Hispanic heritage by providing her with books and toys in Spanish. *See id*. The pre-adoptive parents and family fluently speak Spanish. *See id*. The Child recognizes the pre-adoptive resource as her primary caregivers and does not have a bond with Mother. *See id*. at 35.

Mother testified on her own behalf, downplaying the incidents between herself and I.J.O.Q. *See id*. at 77-80. She denied domestic violence and appeared dependent on I.J.O.Q. *See id*. at 77-78. Mother admitted to calling the police, even though she claimed there was no abuse in her relationship with I.J.O.Q. *See id*. at 80. She also blamed herself for the discord in their relationship. *See id*. at 102.

Regarding her drug abuse issues, Mother testified that she obtained a medical marijuana card to help with stomach pains due to gastroparesis. *See id*. at 95. Mother also testified that she continued to use marijuana, despite being pregnant with another child at the time of the termination hearing. *See id*. at 76, 84, 91, 98. Mother stated that the Esper Treatment Center prescribed her suboxone for stomach pain, even though it is a drug typically used for opioid addiction. *See id*. at 30, 61, 66. Mother never provided a medical prescription or verification that a treating physician prescribed the marijuana and suboxone. *See id*. at 66.

At the end of the termination hearing, the guardian *ad litem* agreed with OCY that it met its burden establishing that termination is in the Child's best interest because: (1) the Child is very bonded with her pre-adoptive family and it would be detrimental to sever that bond and (2) there was no evidence or testimony of a bond between Mother and Child and it would not be detrimental to the Child if Mother's rights were terminated. *See id*. at 108-09.

On April 19, 2024, the orphans' court entered the decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[1] Further, by order also dated and entered April 19, 2024, the orphans' court changed Child's permanency goal from reunification to adoption. Mother filed a timely notice

---

[1] *See* 23 Pa.C.S.A. §§ 2101-2938.

of appeal from the decree terminating her parental rights and attached thereto a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 905(a)(2) and 1925(a)(2)(i).[2]   The orphans' court thereafter authored an opinion in compliance with Rule 1925(a)(2)(ii).

Mother raises the following issues for our review:

1. Whether the [orphans'] court committed an abuse of discretion and/or error of law when it concluded that [OCY] established, by clear and convincing evidence, the grounds for involuntary termination of parental rights of Mother under 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the [orphans'] court committed an abuse of discretion and/or error of law when it concluded that [OCY] established, by clear and convincing evidence, the grounds for involuntary termination of parental rights of Mother under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the [orphans'] court committed an abuse of discretion and/or error of law when it concluded that [OCY] established, by clear and convincing evidence, the grounds for involuntary termination of parental rights of Mother under 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the [orphans'] court committed an abuse of discretion and/or error of law when it concluded that [OCY] established, by clear and convincing evidence, the grounds for involuntary termination of parental rights of Mother under 23 Pa.C.S.A. § 2511(a)(8)[] and [](b)?

---

[2] Mother did not appeal from the order changing Child's permanency goal from reunification to adoption; thus, we need not address it.

Mother's Brief at 6.[3]

Appellate review in termination of parental rights cases implicates the following principles:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the [trial] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, [w]e must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (internal citations and quotation marks omitted).

---

[3] We note with disapproval that, although Mother raised four issues in her statement of questions involved, she failed to address each issue separately in the discussion section of her appellate brief. *See* Pa.R.A.P. 2119(a) (providing that "the argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Instead, Mother provided a single generalized argument.

When presented with a petition for involuntary termination, the trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted). This determination requires a bifurcated analysis. *See* 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under any one or more of the eleven enumerated grounds set forth in section 2511(a). *See* 23 Pa.C.S.A. § 2511(a). Only if the court determines that the petitioner has established grounds for termination under section 2511(a) does it then engage in assessing the petition under section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must satisfy both section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *C.M.*, 255 A.3d at 359 (citation omitted).

In order to affirm the termination of parental rights, this Court need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004)

(*en banc*).  Given this latitude, we confine our analysis to sections 2511(a)(2) and (b),[4] which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

We initially address Mother's challenge to the orphans' court determination regarding section 2511(a)(2).  In order to satisfy subsection (a)(2), the petitioning party must establish: "(1) repeated and continued

---

[4] This corresponds with Mother's second issue, challenging termination under subsection (a)(2), and part of her fourth issue, challenging termination under subsection (b).  Given our disposition herein, we do not need to address Mother's first, third, and part of her fourth issue challenging section 2511(a)(1), (5), and (8). ***See In re B.L.W.***, 843 A.2d at 384.

- 12 -

incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to subsection (a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*.

Mother maintains that the orphans' court erred and abused its discretion by terminating her parental rights under subsection (a)(2). In support of her assertion, Mother presents the overarching argument that OCY and the orphans' court failed to acknowledge her progress with her treatment plan because they only focused on her relationship with I.J.O.Q. *See* Mother's Brief at 14. Mother points to a three-month period between August and November of 2023 in which her drug tests were negative for all drugs other than marijuana, for which she has a medical card. Mother additionally claims that she was compliant with recommended medication management and therapeutic services until those services were discontinued due to the goal change from reunification to adoption. Mother asserts that, although she experienced periods of unemployment, she provided documentation of employment at the time of the goal change to adoption. Mother claims that she provided a lease to OCY, but the OCY caseworker was suspicious that she was living with I.J.O.Q. Mother also points out that she engaged in parenting

services and had positive mother/child interactions. In sum, Mother contends that, despite her best efforts, OCY minimized her progress and focused on her perceived negative relationship with I.J.O.Q.

The orphans' court concluded that OCY satisfied the requirements of subsection (a)(2) by clear and convincing evidence. The court reasoned: (1) Mother suffered from repeated and continued parental incapacities; (2) that have caused Child to be without essential parental care, control, and subsistence; and (3) Mother's respective incapacities cannot, or will not, be remedied. *See* Orphans' Court Opinion, 6/7/24, at 6-12; *see also* 23 Pa.C.S.A. § 2511(a)(2). The orphans' court acknowledged that Mother engaged in some services but noted that she failed to complete and/or comply with the recommended treatment plan and continued to test positive for substances at drug screens. *See* Orphans' Court Opinion, 6/7/24, at 6-10. The orphans' court also expressed concerns about Mother refusing to acknowledge her abusive relationship with I.J.O.Q., and how it negatively impacts her life and ability to safely parent Child. *See id*. at 11. The orphans' court specifically found that Mother, despite ample resources provided to her, refused to remedy her incapacities and resist obstacles such as her abusive relationship with I.J.O.Q. in order to maintain the parent-child relationship. *See id*. at 12-13. The orphans' court aptly summarized its findings with respect to Mother, as follows:

> This [c]ourt is clearly convinced the [M]other failed in every instance to utilize the resources provided to her to preserve her

- 14 -

J-S34017-24

parental relationship. Appropriate resources were put into place to help her achieve reunification with [Child]. [M]other refused the recommended help and/or minimally complied with offered services. [Mother] persists in maintaining an abusive relationship with I.J.O.Q. She cannot or will not place [Child's] needs above her own. The skills and judgment needed to provide for the physical and emotional well-being of [Child] remain problematic. The circumstances which led to the placement of the [C]hild have not been alleviated.

Orphans' Court Opinion, 6/7/24, at 13.

Based on our review, we discern no abuse of discretion or error of law by the orphans' court in reaching its determination that OCY met its evidentiary burden with respect to subsection (a)(2). The certified record reveals ample competent evidence which supports the orphans' court's findings that Mother has displayed repeated and continued incapacity or refusal; (2) that such incapacity or refusal has caused Child to be without essential parental care, control or subsistence; and (3) that the causes of Mother's incapacity or refusal cannot or will not be remedied. OCY initially removed the Child from Mother's care due to Mother's drug use, lack of housing, and inability to meet the Child's basic needs. At the termination hearing, OCY presented ample competent evidence, including the testimony of the OCY social worker, to establish that Mother did not complete any of the goals in her treatment plan or address any of the circumstances that led to the Child's placement. Thus, as the orphans' court's factual findings are supported by the evidence, this Court will not disturb its ruling as to subsection (a)(2).

We turn now to Mother's challenge to subsection (b), which focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943-944 (Pa. Super. 2018). One factor to be considered as part of the subsection (b) analysis is the existence of an emotional bond, if any, between parent and child. *See id*. In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See id*. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child. *See id*.

We note that although Mother referenced section 2511(b) in her statement of questions involved and provided legal standards applicable to that subsection in her brief, she did not present any argument regarding subsection (b). Pursuant to our appellate rules, the appellant's brief must include a discussion of each question raised on appeal and a "citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). This Court will not review a claim unless it is developed in the argument section of an appellant's brief and supported by citations to relevant authority. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are

not appropriately developed are waived." ***Lackner v. Glosser,*** 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted).

Here, Mother's brief provides no discussion related to section 2511(b). Mother does not explain the basis for her challenge to the orphans' court finding that termination of her parental rights would best serve Child's interest under subsection (b). Mother does not discuss, let alone argue, that she had a parental bond with the Child or that the orphans' court finding was not in the Child's best interest. Indeed, Mother does not even mention Child in the discussion section of her brief. As Mother does not present any argument concerning the orphans' court's determination as to section 2511(b), she has waived any challenge to that ruling.[5]

Having concluded that there are sufficient grounds for termination pursuant to section 2511(a)(2), and that Mother waived her challenge to the orphans' court's findings pursuant to section 2511(b), we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

---

[5] Even if Mother had preserved her challenge to the orphans' court's ruling regarding section 2511(b), we would conclude that it lacked merit. The evidence presented at the termination hearing established that: (1) Child was in placement for thirteen months at the time the petition for involuntary termination was filed; (2) Child has a parental bond with foster parents, whom she calls "mommy and daddy;" (3) Foster parents provide for Child's physical, developmental, and emotional needs; and (4) Child does not have a parental bond with Mother. ***See*** Orphans' Court Opinion, 6/7/24, at 11, 13; ***see also*** N.T. 4/18/24, at 34-35, 109.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/14/2025